**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | | |
|---|---|---|
| SURGENEX, LLC, | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-11486 |
| | ) | |
| ORGANOGENESIS HOLDINGS INC., | ) | |
| | ) | |
| Respondent. | ) | |

**SURGENEX, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL
COMPLIANCE WITH DOCUMENT AND DEPOSITION SUBPOENAS**

MiMedx Group, Inc. ("MiMedx") has sued Surgenex, LLC ("Surgenex") in the District of Arizona, asserting infringement of, among others, U.S. Patent No. 8,709,494 (the "'494 Patent"), for Surgenex's manufacture and sale of various multi-layered, placental tissue products. During discovery in this ongoing suit, MiMedx produced a settlement agreement resolving a patent litigation with NuTech Medical, Inc. ("NuTech"), a company that was acquired by Organogenesis Holdings Inc. (collectively, with NuTech, "Organogenesis").

Given the wealth of authority from the U.S. Court of Appeals for the Federal Circuit regarding the relevancy of a party's past settlement agreement to at least reasonable royalty damages under 35 U.S.C. § 284, Surgenex served document and deposition subpoenas on Organogenesis generally seeking information related to the litigation and settlement between MiMedx and Organogenesis. In response, Organogenesis refused to comply and asserted mostly conclusory objections to the document subpoena and seemingly no objections to the deposition subpoena. Notwithstanding these deficiencies, Surgenex significantly narrowed the scope of its document requests and agreed to shorten or forego a deposition based on any documents produced, to minimize any purported burdens associated with compliance of the subpoenas. That effort has produced no fruit as Organogenesis has ignored this overture for weeks. Because Organogenesis never objected with specificity to the subpoenas that were initially served, Surgenex and this Court is left with no understanding as to how compliance with *narrowed* subpoenas could remotely be unduly burdensome. And for Organogenesis to supply that explanation in any opposition to this motion would be too late. Accordingly, the Court should compel Organogenesis to comply with the narrowed subpoenas.

## I.    BACKGROUND

### A.    Procedural Background

MiMedx filed a patent infringement suit in Arizona, asserting eight patents (the "Patents-in-Suit"), including the '494 Patent, against Surgenex for various multi-layered, placental tissue graft products or allografts that it makes and sells ("Surgenex Litigation").  *See* Complaint, *MiMedx Grp., Inc. v. Surgenex, LLC*, No. 24-cv-3558 (D. Ariz. Oct. 10, 2025), ECF No. 1.  Fact discovery is currently expected to close on May 1, 2026.

During discovery, MiMedx produced a settlement resolving a patent infringement case involving Organogenesis[1] and another co-defendant, DCI Donor Services, Inc., in Texas ("Organogenesis Litigation").  *See* Joint Status Report at 1, *MiMedx Grp., Inc. v. NuTech Med. Inc.*, No. 15-cv-369 (N.D. Ala. Oct. 9, 2020), ECF No. 188 ("a final settlement agreement has been reached and . . . the parties are currently securing signatures").[2]  In that case, MiMedx also asserted the '494 Patent against Organogenesis, alleging that its NuShield II™ product—"a tissue graft product which includes an amnion membrane and a chorion membrane" from human placenta— infringed the patent.  Compl. ¶¶ 35–37, 71–78, *MiMedx Grp., Inc. v. NuTech Med. Inc.*, No. 15-

---

[1]  Based on publicly available information, NuTech, the initial co-defendant, was acquired by Organogenesis in or around March 2017.  *See, e.g.*, Organogenesis, Our History, *available at* https://careers.organogenesis.com/our-history ("2017: Acquires NuTech Medical and expands product portfolio to include Surgical and Sports Medicine"); Agreement and Plan of Merger (at page    37), *available    at*    https://www.sec.gov/Archives/edgar/data/1661181/ 000110465918072395/a18-41203_1ex2d1.htm (NuTech "shall not without the prior written consent" of Organogenesis settle the Organogenesis litigation).  Given the acquisition, they effectively became one entity, and Organogenesis should also produce NuTech documents that are responsive to the narrowed categories.  *See* Ex. 3 at 7 (defining Organogenesis and NuTech as one and the same).  For ease of reference, "Organogenesis" herein refers to these two collectively.

[2]  If the Court desires a copy of the agreement to decide this Motion to Compel, Surgenex will confer with MiMedx and Organogenesis to obtain consent to file it under seal for the Court's review.

cv-369 (N.D. Ala. Mar. 2, 2015), ECF No. 1.  Also, during discovery, MiMedx represented that it "does not have access to documents" containing Organogenesis's confidential business information.  Ex. 2 (Excerpt of MiMedx Objs. & Resps. to Surgenex Document Requests) at 4.  Both the settlement agreement and the representation by MiMedx prompted Surgenex to serve document and deposition subpoenas to Organogenesis for information relevant to damages issues in the Surgenex Litigation.  *See generally* Ex. 3 at 1–32 (Subpoenas).

After service of the subpoenas, *see* Ex. 3 (Proof of Service) at 33, on February 18, 2026, Organogenesis objected to the subpoenas in whole, *see* Ex. 4 (Correspondence) at 6–9.  Almost all the objections are boilerplate.  *See id.*  On February 19, 2026, Surgenex emailed Organogenesis, disputing the applicability of the objections and offering to meet and confer about them.  *Id.* at 5.  The parties met and conferred telephonically on February 23, 2026, where Surgenex agreed to narrow the document requests in subpoenas to four categories of documents.  *Id.* at 2–4.  Those categories are:

1. Documents sufficient to identify the annual sales of Organogenesis's multi-layered placental tissue products by units sold and revenue both before and after the settlement agreement;

2. Documents sufficient to identify the composition of Organogenesis's multi-layered placental tissue products sold both before and after the settlement agreement, such that they indicate whether a spongy/intermediate layer exists, and the uses for these products;

3. Sealed filings or unredacted expert reports from the underlying *MiMedx v. Organogenesis* litigation containing [Organogenesis's] non-infringement/damages positions and underlying materials to support those positions; and

4. A declaration under oath by someone knowledgeable and employed at Organogenesis that the documents produced by Organogenesis in response to the Document Subpoena satisfy the authenticity requirement under Fed. R. Evid. 901, and if accurate, the business records requirements under Fed. R. Evid. 803(6) (original request no. 16).

*See id.* at 2–3.  Surgenex followed up with correspondence on February 25, 2026, reiterating that the document requests have been narrowed, as well as offering to shorten the length of time for any deposition or foregoing it altogether based on any document production.  *Id.* at 2–4.  Surgenex requested a response to that correspondence by the end of that week, and then again on March 3, 2026 and March 13, 2026.  *Id.* at 1–4.  In response to the March 3, 2026 correspondence, Organogenesis's counsel indicated that counsel was in the midst of an arbitration hearing, but would get back to Surgenex.  *Id.* at 1.  Organogenesis did not respond to the March 13, 2026 correspondence.  *See id.*  Given Organogenesis's silence and refusal to produce documents or a corporate witness for a deposition, the parties are at an impasse.

## B.    Technological Background

The Patents-in-Suit are directed to multi-layered tissue graft products derived from the human placenta, which is a temporary organ that develops in the mother during pregnancy and provides nutrients and oxygen to her fetus.  *See* Surgenex's Opening CC Br. at 2–3, *MiMedx Grp., Inc. v. Surgenex, LLC*, No. 24-cv-3558 (D. Ariz. Oct. 10, 2025), ECF No. 78.  The placenta comprises two separable layers called the amnion and chorion.  *Id.*  In between those layers, there is an intermediate (or spongy) layer.  *Id.*  Placental allografts made from amnion and/or chorion have been well known and used as therapeutic products for over a century.  *Id.* at 3 (citing '494 Patent col. 1 ll. 26–32).

## II.    STANDARD OF REVIEW

A subpoenaing party may move to compel production of documents and a deposition under Federal Rules of Civil Procedure 30, 37, and 45.  *See* Fed. R. Civ. P. 30(a)(1), 34(c), 45.  Rule 26(b) governs the scope of discovery for a subpoena.  *Donovan v. City of Boston*, 2023 WL 349851, at \*2 (D. Mass. Jan. 20, 2023).  Rule 26(b)(1) permits a party to "obtain discovery regarding any

non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Although discovery has limits, Rule 26(b)(1) still permits liberal discovery and the notion of relevance is construed broadly. *In Spite Telecom LLC v. Rosciti Constr. Co. LLC*, 747 F. Supp. 3d 270, 281–82 (D. Mass. 2024); *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015) (scope of discovery is "decidedly broad"), *modified on other grounds*, 160 F. Supp. 3d 431 (D. Mass. 2016).

The subpoenaing party bears the burden of proving relevance and proportionality of the discovery sought. *Jiajing (Beijing) Tourism Co. v. AeroBalloon USA, Inc.*, 2021 WL 6284114, at *4 (D. Mass. Oct. 12, 2021). The subpoenaed party "resisting discovery bears the burden of showing that the subpoena imposes an undue burden, and it cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *Thomas & Betts Corp. v. New Albertson's, Inc.*, 2013 WL 11331377, at *4 (D. Mass. July 11, 2013) (citations and quotations omitted); *see also Katz v. Liberty Power Corp., LLC*, 2020 WL 3492469, at *2 (D. Mass. June 26, 2020) (similar).

## III.    ARGUMENT

### A.    Organogenesis's Objections to the Subpoenas Lack Evidentiary Support.

Despite Organogenesis's deficient objections, Surgenex has narrowed the requests in the document subpoena to four categories. Ex. 4 at 2–3. The lone dispute before the Court should only be whether Surgenex's document requests target relevant evidence that is proportional to its needs in the Surgenex Litigation. Federal Circuit and other precedent answers this in the affirmative.

5

**1.      The information requested in categories 1 and 2 is relevant to damages.**

While Surgenex disputes that it infringes Patents-in-Suit in the Surgenex Litigation, the information requested in categories 1 and 2 is relevant to the issue of damages.  Under 35 U.S.C. § 284, if Surgenex is found to have infringed the Patents-in-Suit, MiMedx is entitled to no less than a "reasonable royalty" in damages.  A reasonable royalty "generally has two prongs: a royalty base and a royalty rate."  *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *see also Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 27 (Fed. Cir. 2012) ("[T]he classic way to determine the reasonable royalty amount is to multiply the royalty base, which represents the revenue generated by the infringement, by the royalty rate, which represents the percentage of revenue owed to the patentee.") (citation omitted).  A "reasonable method for determining a reasonable royalty is the hypothetical negotiation approach, which attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) (citation and quotations omitted).

The Federal Circuit allows parties to rely on prior "settlement agreements to be considered in determining a reasonable royalty rate."  *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1381 (Fed. Cir. 2017) (citing *Summit 6*, 802 F.3d at 1299–1300); *see also Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019) ("We have previously explained that prior settlements can be relevant to determining damages." (citation omitted)); *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("Our cases appropriately recognize that settlement agreements can be pertinent to the issue of reasonable royalties." (citation omitted)).  Relevant settlement agreements include those where there is an overlap of parties, patents, and/or technology, between the agreements and the litigation in which those agreements

6

will be used.  *See Elbit*, 927 F.3d at 1299–1300 *Elbit*, 927 F.3d at 1299 (relevance determined by, inter alia, similarities in technology and "market conditions"); *Rembrandt*, 853 F.3d at 1381 ("The . . . settlement agreement was relevant here because it contained a license of the very patents [the defendant] was found to infringe."); *Summit 6*, 802 F.3d at 1299–1300 (past settlement agreement was relevant because it involved the patent-in-suit and the technology at issue).

Here, Organogenesis entered into a settlement agreement with MiMedx to resolve litigation involving multi-layered placental allografts and the '494 Patent, which is one of the Patents-in-Suit.  *See supra* Part I (Procedural Background).  Discovery into the volume of, and the revenue from, sales of Organogenesis's NuShield™ product or any other multi-layered placental allograft, as well as their composition, in the time leading up to the settlement is relevant to a reasonable royalty analysis in the Surgenex Litigation.[3]  *See Elbit*, 927 F.3d at 1299–1300 ("Thus, whether in using a settlement agreement at all or in drawing the appropriate lessons from the particular settlement for the case in which it is being used, relevant circumstances—such as similarities and differences in technologies and market conditions and the state of the earlier litigation when settled—must be carefully considered.  Use of actual past licenses and negotiations to inform the hypothetical negotiation does not require identity of circumstances.  Instead, the prior licenses or settlements need to be sufficiently comparable for evidentiary purposes and any differences in

---

[3]  Notably, NuTech—*well after its acquisition by Organogenesis and thus the two were effectively the same entity*—successfully advanced a similar argument in the Organogenesis Litigation when it moved to compel MiMedx to produce a settlement agreement and related documents between MiMedx  and a third-party, on the ground that the agreement concerned the '494 Patent and was therefore relevant to determining a reasonable royalty in the Organogenesis Litigation.  *See* Defendants' Motion to Compel Production of Documents at 2–11, *MiMedx Grp., Inc. v. NuTech Med. Inc.*, No. 15-cv-369 (Mar. 7, 2018 N.D. Ala.), ECF No. 140.  And NuTech won that battle. *See generally* Order at 1–5, *MiMedx Grp., Inc. v. NuTech Med. Inc.*, No. 15-cv-369 (N.D. Ala. Apr. 19, 2018), ECF No. 145; Order at 1–2, *MiMedx Grp., Inc. v. NuTech Med. Inc.*, No. 15-cv-369 (N.D. Ala. Apr. 6, 2018), ECF No. 143.

circumstances must be soundly accounted for." (cleaned up)); *see also ChromaDex, Inc. v. Elysium Health, Inc.*, 2021 WL 859649, at *5 (D.S.C. Mar. 8, 2021) (permitting discovery into third-party's business information because it was relevant to calculating lost profits and a reasonable royalty).

Critically, Organogenesis has continued to market the NuShield™ product following the settlement.[4] *See* Organogenesis, NuShield™, *available at* https://www.nushieldcomplete.com/. A re-designed product or products that do not infringe the '494 Patent are relevant to the issue of non-infringing alternatives. *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770–71 (Fed. Cir. 2014) (explaining how non-infringing alternatives can impact a reasonable royalty analysis); *In re Ecast, Inc.*, 96 F. App'x 710, 711 (Fed. Cir. 2004). If they are non-infringing alternatives, these products would also be pertinent to a lost profits analysis—another measure of damages that Surgenex must defend against. *See In re Ecast, Inc.*, 96 F. App'x at 711 ("evidence of the availability of an acceptable noninfringing alternative is relevant to a lost profits analysis and to a reasonable royalty analysis" (citations omitted)); *see also Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) (availability of non-infringing alternative precludes an award of lost profits).

Organogenesis seemingly resists production of financial documents responsive to category 1, but not technical documents responsive to category 2, on the theory that such information cannot be sought under *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990). *See* Ex. 4 at 8. But *Micro Motion* does not bar discovery of third-party business information under any and all circumstances. There, the district court ordered a new trial, *after* the parties had already finished discovery and tried their case once. *Micro Motion*, 894 F.2d at 1320, 1323. The parties

---

[4] Given that the contents of the settlement agreement are not public, Surgenex cannot affirmatively state the terms of the agreement, but can rely on inferences to be drawn from publicly available information.

8

then agreed to update their discovery related to damages before the second trial. *Id.* at 1320. During this time, the plaintiff (patentee) subpoenaed, *inter alia*, financial information from third parties that *it had never sought before* and claimed the information was pertinent to damages. *Id.* at 1320–21, 1326 n.9. The Federal Circuit found that under these circumstances, the requested information was irrelevant to the plaintiff's damages theories as evidenced by the fact that the plaintiff "tried the issue of damages in the first trial without the [subpoenaed] discovery" and even "offered to forego additional discovery if it could secure an early second trial date." *Id.* at 1326 & n.9. This is a far cry from where Surgenex is now. Surgenex is in discovery, subpoenaing information related to a relevant settlement agreement, given the assertion of the '494 Patent and the placental allograft technology at issue in the Organogenesis and Surgenex litigations. And no trial has occurred yet in the Surgenex Litigation.

In sum, Organogenesis should produce responsive documents to narrowed categories 1 and 2.

### 2. MiMedx's past contentions requested in category 3 affect its credibility.

The relevance of the infringement and damages expert reports from the Organogenesis Litigation—which MiMedx no longer has, *see* Ex. 2 at 4—involving the overlapping '494 Patent and the same placental allograft technology should be self-evident. MiMedx's infringement and damages contentions in these reports will reveal at least how MiMedx: (a) interprets the scope of the claims in the '494 Patent; and (b) calculates damages. Any inconsistencies or discrepancies between MiMedx's previous analyses in the Organogenesis Litigation and its current analyses in the Surgenex Litigation on infringement and damages issues can adversely impact MiMedx's credibility, and the credibility of a party is always relevant in a case. *See, e.g.*, *Fleet Connect Sols. LLC v. Waste Connections US, Inc.*, 2022 WL 2805132, at \*2 (E.D. Tex. June 29, 2022) (ordering

production of patentee's infringement contentions from other litigation on patents related to the asserted patent, where defendant argued that the contentions were relevant to claim interpretation and patentee's credibility); *Finjan, Inc. v. Qualys Inc.*, 2020 WL 4923964, at *3 (N.D. Cal. Aug. 21, 2020) (ordering production of past infringement reports because they can reveal how a party "interprets the scope of the patents and claims"); *Infernal Tech., LLC v. Microsoft Corp.*, 2019 WL 5388442, at *2 (E.D. Tex. May 3, 2019) (prior litigating positions bear on patentee's credibility and are relevant to claims and defenses in a patent case); *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, 2021 WL 5908985, at *2–4 (S.D. Cal. Dec. 14, 2021) (ordering production of materials from earlier arbitration as they could reveal information relevant to infringement, invalidity, and damages); *cf. Koninklijke Philips N.V. v. Wangs Alliance Corp.*, 2018 WL 283893, *5 (D. Mass. 2018) (compelling production of patentee's validity contentions from previous litigation). In sum, Organogenesis should produce responsive documents to narrowed category 3 if it still has them.

### 3.    The declaration requested in category 4 is relevant to admissibility.

Documents produced by Organogenesis need to be authenticated if Surgenex is to rely on them in the Surgenex Litigation. Fed. R. Evid. 901. Surgenex may also need to overcome a hearsay objection to some or all the produced documents, and one viable argument is that the documents are records of regularly conducted activity (colloquially referred to as the business records exception to hearsay). Fed. R. Evid. 803(6); *see also* Fed. R. Evid. 902(11). Thus, the declaration is relevant and proportional to Surgenex's needs in its case with MiMedx, and it would minimize or lessen any burden associated with the deposition. *See, e.g.*, *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 262 (S.D.N.Y. 2024) (encouraging the "parties to seek agreement as to an affidavit or declaration authenticating the documents" that will be produced pursuant to a subpoena to "obviate the need for a deposition"); *Davis S R Aviation, LLC v. Rolls-Royce*

*Deutschland & Co. KG*, 2011 WL 5999332, at *4 (W.D. Tex. Nov. 30, 2011) (ordering production of "a records custodian's declaration with the documents, consistent with Fed. R. Evid. 902(11), demonstrating that the documents are business records under Fed. R. Evid. 803(6)" or otherwise producing "a witness to authenticate the documents and address whether they are records of regularly recorded activity"); *Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 241 (D.D.C. 2013) (consistent with Rule 45 to order production of "an affidavit confirming the authenticity of the subpoenaed [records] and their maintenance as business records").  Compliance should be ordered.

### B.    Any Deposition of Organogenesis Will be Short and Focused on Limited Topics.

A party subpoenaed for a deposition bears a "particularly heavy burden" to show that a deposition should be barred as opposed to "limited" in some fashion.  *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961) (citations omitted).  That is, prohibiting the taking of a deposition is very unusual, and there must be extraordinary or exceptional circumstances to do so.   *Green*, 152 F. Supp. 3d at 35 (citing cases); *Prozina Shipping Co. v. Thirty-Four Automobiles*, 179 F.R.D. 41, 48 (D. Mass. 1998).

Here, Organogenesis has offered no objections at all to the deposition subpoena and has not moved for a protective order, assuming that Surgenex would not pursue a deposition without documents.  *See, e.g.*, Ex. 4 at 9.  On that basis alone, Organogenesis should sit for a deposition. *See Aeta Cas. & Sur. Co. v. Rodeo Autobody,* 130 F.R.D. 2, 3 (D. Mass. 1990) ("However, the fact that objections were served is *no excuse whatsoever* not to attend the deposition.  If the witnesses considered that they had grounds not to appear, they were required to file a motion for a protective order." (emphasis in original)).  Notwithstanding the likely forfeiture or waiver of any objections to a deposition, Surgenex will *sua sponte* agree to a deposition of no more than three-and-a-half

11

hours, following the production of documents, about the following two topics: (1) the facts and circumstances surrounding the Organogenesis settlement agreement; and (2) Organogenesis's multi-layered placental allografts before and after the settlement. Given Organogenesis's failure to demonstrate that a deposition would either seek irrelevant testimony or be unduly burdensome, as well as Surgenex's concessions on any deposition, Organogenesis should sit for a deposition.

**C.    The Court Should Disregard Conclusory Objections to the Document Subpoena.**

This Court prohibits the boilerplate objections that Organogenesis has lobbed at the document subpoena. *Compare* Ex. 4 at 7–9, *with Katz v. Shell Energy N. Am. (US), LP*, 566 F. Supp. 3d 104, 107 (D. Mass. 2021) (improper to resist subpoenas on the basis of "boilerplate" objections as it is "not enough to merely assert overbreadth, burden, or oppression; instead, the party resisting discovery must *specifically show how each request for production* is either not relevant or overbroad, burdensome, or oppressive" (emphasis added) (citing *Healthedge Software, Inc. v. Sharp Health Plan*, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021)). Organogenesis has effectively made no objections at all. *HealthEdge Software*, 2021 WL 1821358, at *4 ("boilerplate generalized objections are inadequate and tantamount to not making any objection at all" (alteration omitted) (quoting *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999))). For this reason alone, the Court should compel Organogenesis to produce responsive documents to the four narrowed document requests

## IV.    CONCLUSION

For the foregoing reasons, the Court should compel Organogenesis to produce: (1) responsive documents to the four narrowed document requests within 7 days of its order in accordance with the Protective Order from the Surgenex Litigation; and (2) a witness for a short deposition within 7 days after completing its production. A Proposed Order is included for the

12

Court's convenience.

Dated: March 27, 2026

Respectfully submitted,

 */s/ Daniel L. Shores*

Daniel L. Shores (MA Bar No. 681290)
Rothwell, Figg, Ernst & Manbeck, P.C.
10 Derne Street, Suite 302
Boston, MA 02114
Telephone: (617) 312-3101
Facsimile: (202) 783-6031
Email: dshores@rothwellfigg.com

Hugham Chan (*pro hac vice* forthcoming)
Rothwell, Figg, Ernst & Manbeck, P.C.
901 New York Ave., Suite 900 East
Washington, DC 20001
Telephone: (771) 717-9806
Facsimile: (202) 783-6031
Email: hchan@rothwellfigg.com

*Attorneys for Surgenex, LLC*

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | | |
|---|---|---|
| SURGENEX, LLC, | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| ORGANOGENESIS HOLDINGS INC., | ) | |
| | ) | |
| Respondent. | ) | |

**[PROPOSED] ORDER**

Upon consideration of the Motion to Compel Compliance with Document and Deposition

Subpoenas, and any opposition or replies thereto, it is hereby

**ORDERED** that the Motion to Compel is **GRANTED**;

**ORDERED** that, in response to Surgenex, LLC's ("Surgenex") document subpoena,

Organogenesis Holdings Inc. ("Organogenesis") produce responsive information to the following

document requests within seven (7) days of this Order:

1. Documents sufficient to identify the annual sales of Organogenesis's multi-layered placental tissue products by units sold and revenue both before and after the settlement agreement in case no. 15-cv-369 (N.D. Ala.) ("Organogenesis Litigation");

2. Documents sufficient to identify the composition of Organogenesis's multi-layered placental tissue products sold both before and after the settlement agreement in the Organogenesis Litigation, such that they indicate whether a spongy/intermediate layer exists, and the uses for these products;

3. Sealed filings or unredacted expert reports from the underlying Organogenesis Litigation containing Organogenesis's non-infringement/damages positions and underlying materials to support those positions; and

4. A declaration under oath by someone knowledgeable and employed at Organogenesis that the documents produced by Organogenesis in response to the Document Subpoena satisfy the authenticity requirement under Fed. R. Evid. 901, and if accurate, the business records requirements under Fed. R. Evid. 803(6); and

**ORDERED** that, in response to Surgenex's deposition subpoena, Organogenesis produce a corporate witness for a deposition of no more than three-and-a-half hours, seven (7) days after a complete document production, that is prepared to testify about: (1) the facts and circumstances surrounding the Organogenesis settlement agreement; and (2) Organogenesis's multi-layered placental allografts before and after the settlement agreement.

Dated: _____                        _____
                                                     UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2026, I caused a copy of the foregoing to be: (1) filed electronically with the Clerk of the Court for the U.S. District Court for the District of Massachusetts; and (2) emailed to counsel for Organogenesis:

Matthew Baltay
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1262 (Voice)
(617) 832-7000 (Fax)
mbaltay@foleyhoag.com (Email)


*/s/ Daniel L. Shores*
Daniel L. Shores (MA Bar No. 681290)

16